UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD M. MIMS,

       Plaintiff,                 Civil Action No. 16-10037
                                 Honorable Thomas L. Ludington
            v.              Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

       Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF No. 13, 16]

Plaintiff Robert Mims appeals a final decision of Defendant

Commissioner of Social Security ("Commissioner") denying his application

for disability insurance benefits ("DIB") under the Social Security Act (the

"Act"). The Honorable Thomas L. Ludington referred this matter for a report

and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [ECF No. 2].

After reviewing each party's motion for summary judgment, the Court finds

that the decision by the administrative law judge ("ALJ") is supported by

substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion **[ECF No. 16]** be **GRANTED**;

- Mims's motion **[ECF No. 13]** be **DENIED**; and,

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    BACKGROUND

### A.    Mims's Background and Claimed Disabilities

Mims was 42 years old when he submitted his application for disability benefits on September 6, 2013, and alleged a disability onset date of January 18, 2010.  [ECF No. 7-3, Tr. 81-82].  He has past relevant work as a heavy equipment mechanic. [*Id.*, Tr. 90].

Mims alleged that he was disabled due to back pain, neck pain, arm pain, nerve damage, muscle atrophy in left leg, anxiety, diabetes, high cholesterol, high blood pressure and severe depression.  [ECF No. 7-3, Tr. 81].  After a hearing, the ALJ determined that Mims was not disabled. [ECF No. 7-2, Tr. 14-26].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1]. Mims timely filed for judicial review. [ECF No. 1].

### B.    The ALJ's Application of the Disability Framework Analysis

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

3

the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14
F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Mims was not
disabled. At step one, the ALJ determined that Mims had not engaged in
substantial gainful activity since January 18, 2013. [ECF No. 7-2, Tr. 16].
At step two, the ALJ identified severe impairments of lumbar spondylosis
status post fusion surgery and three laminectomies of the lumbar spine,
cervical spondylosis, osteoarthritis of the anterior bilateral ankle joints, and
depression. [*Id.*]. At step three, the ALJ determined that Mims's
impairments did not meet or medically equal a listed impairment. [*Id.* Tr.
16-17].

Next, the ALJ assessed Mims's RFC, finding him capable of
performing sedentary work[2] with the following limitations:

> The claimant can lift and carry ten pounds occasionally and
> small docket files frequently. The claimant can sit six hours and
> can stand and/or walk two hours. The claimant can never climb
> ladders, ropes and scaffolds, but can occasionally climb ramps
> and stairs. He can occasionally balance, stoop, crouch, kneel,
> and crawl, and can occasionally push and pull or operate foot
> controls with the left lower extremity. The claimant should
> avoid concentrated exposure to extreme cold, extreme heat,

---

[2] "Sedentary work" involves lifting no more than ten pounds at a time and
occasionally lifting or carrying articles like docket files, ledgers, and small
tools. Although a sedentary job is defined as one which involves sitting, a
certain amount of walking and standing is often necessary in carrying out
job duties. 20 C.F.R. § 404.1567(a).

4

humidity, wetness, vibration and hazards.  The claimant needs a sit/stand option that can be exercised every 30 minutes but the change in the position would only be momentary and the claimant would not have to leave the workstation or be off task more than 10% when exercising it.  The claimant is limited to simple, routine, repetitive tasks and can have frequent interaction with coworkers and the general public.

[*Id.*, Tr. 19]. At the fourth step, the ALJ determined that Mims did not have the RFC to perform past relevant work. [*Id.*, Tr. 24].  But with the assistance of VE testimony, the ALJ determined at step five that a hypothetical claimant matching Mims's age, education, work experience and RFC could perform a substantial number of jobs in the national economy, including inspector (10,000 jobs nationally), bonder (5,000 jobs nationally) and surveillance system monitor (40,000 jobs nationally), and was thus not disabled.  [*Id.*, Tr. 25].

## II.   ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241

5

(6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009).  An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless.  *Id.* at 655-56.  On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless.  *Id.*; *Gentry*, 741 F.3d at 723, 729; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

Mims argues that his mental RFC was not assessed properly under Social Security regulations, that the ALJ failed to include the required "function-by-function" assessment, that the ALJ erred in not recontacting his treating and consultative physicians; and that she violated the treating physician rule.  The Court finds that these arguments are without merit, and that the ALJ's decision was supported by substantial evidence.

6

### A.

Mims asserts that the ALJ did not properly assess his mental RFC under Social Security Rulings (SSR) 96-8p and 85-15.  In relevant part, SSR 96-8p provides that work-related mental activities generally include the abilities to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."  SSR 85-15 similarly instructs that a finding of disability is warranted when there is a "substantial loss of ability" to "understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting" on a sustained basis.  Mims asserts that the ALJ never discussed "the medical evidence and how it relates to his ability to understand, carryout, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting as required by SSR 96-8p and SSR 85-15."  [ECF No. 13, PageID 481].  But the ALJ did conduct this analysis.

The ALJ found that Mims had moderate difficulties with social functioning and concentration, persistence and pace (CPP).  [ECF No. 7-2,

7

Tr. 23].  Regarding social functioning, she found that he lives with his wife and children but that he testified to yelling at his children often.  She also noted that he testified to giving "dirty look[s]" to people who are in his way or bump into him at the grocery store, and generally does not get along with people.  [*Id*, Tr. 18; citing Tr. 58].  The ALJ mentioned he was cooperative during his psychological exams.  [*Id.*].

As for Mims's CPP, the ALJ found that though he testified he forgets directions and things his wife tells him, the findings from H. Gummadi, M.D.'s consultative examination don't "reflect any other substantial concentration problems to support more than moderate difficulties."  [*Id.*, Tr. 18, citing Tr. 69-70, ECF No. 7-7, Tr. 313-15].  Mims "was able to repeat four digits backwards and forward and he was able to recall three out of three objects immediately and after three minutes.  He was able to multiply single digits and he was able to subtract 7 from 100."  [*Id.*, Tr. 18, citing ECF No. 7-7, Tr. 314]. The ALJ gave little weight to Dr. Gummadi's opinion that Mims was unable to understand, retain and follow simple instructions and was generally restricted to performing simple, routine tasks; she reasoned that Mims's performance on his recall testing was inconsistent with that opinion and that Dr. Gummandi otherwise did not explain this opinion.  [ECF No. 7-2, Tr. 23, citing ECF No. 7-7, Tr. 314].

8

The ALJ further considered the opinion of state agency consultant Leonard C. Balunas, M.D., who reviewed Mims's medical history in December 2013 and opined that he had mild difficulties with social functioning and CPP. [ECF No. 7-2, Tr. 22, citing to ECF No. 7-3, Tr. 86-87]. Taking this evidence into account, the ALJ assessed an RFC limiting him to "simple, routine and repetitive tasks and frequent interactions with coworkers and the general public." [ECF No. 7-2, Tr. 19].

The ALJ's reasoning above belies Mims's allegation that the ALJ did not discuss the medical evidence and how it relates to the factors set forth under SSR 96-8p or SSR 85-15.

**B.**

Mims next asserts that the ALJ violated Social Security Ruling 96-8p by failing to conduct a function-by-function assessment in crafting the RFC, citing *Hogan v. Astrue*, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007). The Commissioner points out that *Hogan* is not a Sixth Circuit case and that it is contrary to Sixth Circuit case law. In this circuit, the ALJ need not provide a function-by-function analysis, nor must she "discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.,* 30 F. App'x 542, 547 (6th Cir. 2002). The ALJ's requirement to specify the claimant's exertional and nonexertional limitations can be done simply by

9

"explain[ing] how the evidence in the record supports the RFC determination, discuss[ing] the claimant's ability to perform work-related activities, and explain[ing] the resolution to any inconsistences contained in the record." *Picklesimer v. Colvin*, No. 3:13-1457, 2015 WL 5944389, at *12 (M.D. Tenn. Oct. 13, 2015) (citing *Delgado,* 30 F. App'x at 548).

Mims also contends that the ALJ did not consider the medical evidence concerning his exertional capacities.  [ECF No. 13, PageID 482]. But this was included in the ALJ's discussion.  The ALJ discussed the consultative examination with Dr. Jai Prasad, noting that Mims had sensory loss in the left thigh and left leg; that his strength was at four on a scale of zero to five; that he had lower back pain and neck stiffness; that he had neurological deficits in his left lower extremity with muscle weakness and sensory loss; that he had a loss of muscle mass in his left calf; and that he experienced radiation of pain in the left hand.  [ECF No. 7-2, Tr. 21, citing ECF No. 7-7, Tr. 317-25].  She described Dr. Prasad's opinion that Mims could perform all postural activities and did not require a walking aid, but is restricted to carrying ten pounds and cannot tie his shoes or squat and arise from squatting.  [ECF No. 7-2, Tr. 23, citing ECF No. 7-7, Tr. 322]. The ALJ also considered Mims's testimony that he suffers from neck and back pain, can sit for only 30 minutes, can stand for longer than 30

10

minutes, can lift ten pounds and can walk a block before sitting down to rest.  [ECF No. 7-2, Tr. 20, citing ECF No. 7-2, Tr. 46, 52, 55].  And the ALJ acknowledged Mims's testimony that he needs to lie down most of the day, but noted that Mims also testified to driving his wife to work in the morning, getting his children ready for school, doing the dishes, preparing simple meals and doing some light cleaning.  [*Id.,* Tr, 17, 55-57, 61-62].

The ALJ's thorough analysis of the record satisfies the requirements of SSR 96-8p, and she cited substantial evidence in the record to support her conclusions such that her decision should be affirmed.  "If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations and internal quotation marks omitted).

## C.

Mims argues that the ALJ committed reversible error by failing to recontact psychiatrist Pawan K. Garg M.D, whose handwritten notes were illegible, and recontact Dr. Gummadi, who did not provide an explanation for his opinion that Mims would be unable to understand, retain and follow simple instructions and was generally restricted to performing simple,

11

routine tasks.  As a general rule, "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)).  And while ALJ's were previously required to recontact medical sources if the evidence they provided was inadequate, regulations that became effective in March 2012 deemed the decision to recontact to be a matter within the discretion of the ALJ. 20 C.F.R. § 404.1520(b); *Hollis v. Comm'r of Soc. Sec.,* No. 13-13054, 2015 WL 357133, at *23 (E.D. Mich. Jan. 27, 2015) ("ALJs now have discretion to decide whether to recontact.").  "[I]f the record contains sufficient evidence, recontacting sources is unnecessary." *Id.*

In June 2014, Dr. Garg M.D., opined that due to Mims "is totally and permanently disabled" due to chronic back pain and depression.  [ECF No. 7-7, Tr. 326].  The ALJ noted that Dr. Garg's progress notes from 2010 to 2013 were "handwritten and mostly illegible."  [ECF No. 7-2, Tr. 21, citing ECF No. 7-7, Tr. 305-311].  Mims asserts that, given the "ambiguity" of Dr. Garg's medical records, the ALJ erred in not recontacting Dr. Garg.  [ECF No. 13, PageID 490-91].

12

But as described above, the record included the findings from Mims's psychological examination with Dr. Gummadi, the opinions of Dr. Balunas and Dr. Gummadi, and Mims's reports of his daily activities and social interactions.  The ALJ did not abuse her discretion in finding that the record was sufficient for her to assess Mims's RFC.  And Dr. Garg's medical opinion did not provide functional limitations for Mims; it simply stated that Mims was disabled, which is a determination reserved for the Commissioner.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  To the extent that Mims would have benefitted from Dr. Garg's opinion regarding his RFC, he bore the responsibility of securing that opinion. *Landsaw,* 803 F.2d at 214.

The ALJ assessed little weight to Dr. Gummadi's opinions that Mims was unable to understand, retain and follow simple instructions and that he Mims's was restricted to work with supervision and interaction with co-workers and supervisors in public."  [ECF No. 7-2, Tr. 23; ECF No. 7-7, Tr. 315].  She reasoned that the "doctor's own reports fail to reveal the type of significant abnormalities one would expect if the claimant was in fact able to follow simple instructions, and the doctor did not specifically address this weakness" and that the results of his mini-exam were inconsistent with his opinions.  [ECF No. 7-2, Tr. 23].  Mims argues that Dr. Gummadi should

13

have been recontacted to specify what abnormalities supported his opinion. [ECF No. 13, PageID 486].  But the ALJ did not need to recontact Dr. Gummadi if she believed that the record before her was sufficient to render an RFC, and as previously stated, it was Mims's responsibility to secure the necessary evidence to support his claims.  Thus, the ALJ did not commit reversible error by not recontacting Dr. Gummadi.

### D.

Mims argues that the ALJ should have given controlling weight to Dr. Garg's opinion that he is totally disabled.  The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  But as noted, the determination of whether a claimant is "disabled" is a determination reserved for the Commissioner, and Dr. Garg's opinion that Mims is disabled is not a medical opinion to which the treating physician rule applies.  *Warner*, 375 F.3d at 390; *Brock v. Comm'r of Soc. Sec.,* 368 F. App'x 622, 625 (6th Cir. 2010).

14

"Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion.  *Gentry*, 741 F.3d at 723.  The ALJ considered these factors when giving no weight to Dr. Garg's opinion.  She explained that "while Dr. Garg does have a treating relationship with the claimant, the treatment history is very sporadic." [ECF No. 7-2, Tr. 23].  The ALJ noted that Mims had seen Dr. Garg twice each year in 2010 and 2011, three times in 2013, and wrote his opinion letter in 2014.  [*Id.*, Tr. 21, citing ECF No. 7-7, Tr. 305-11, 326].  As far as the supportability of Dr. Garg's opinion, the ALJ correctly described his notes as mostly illegible, and that Dr. Garg's "[r]ecords from 2013 show the claimant reported sadness, no motivation, crying spells, and yelling a lot at his children."  [*Id.*, citing ECF No. 7-7, Tr. 307]. While those notations support Mims's claim that he suffers from depression, they do not support Dr. Garg's opinion that he is totally disabled.

For these reasons, Mims's argument that the ALJ erred in failing to given controlling weight to Dr. Garg's opinion under the treating physician rule is without merit.

15

## III.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the

Commissioner's motion [ECF No. 16] be **GRANTED**; that Mims's motion

[ECF No. 13] be **DENIED**; and that the Commissioner's decision be

**AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

<u>s/Elizabeth A. Stafford</u>
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: February 3, 2017

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.

Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of

HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 3, 2017.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager